UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO.: 08-62067-CIV-COHN/SELTZER

RONALD W. KUCZYNSKI,

    Plaintiff,

vs.

LYRA MANAGEMENT, INC.,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S RULE 50 MOTION

**THIS CAUSE** is before the Court upon Defendant's Motion for Judgment as a Matter of Law, pursuant to Federal Rule of Civil Procedure 50, made in open court on the record. The Court has considered the record evidence, the parties' submissions, arguments of counsel, and is otherwise advised in the premises.

### I. BACKGROUND

On May 11, 2005, Defendant Lyra Management, Inc. hired Plaintiff Ronald W. Kuczynski to work as Lyra's president. The employment relationship between Plaintiff and Defendant lasted for nearly two years, at which point Plaintiff resigned.

Eighteen months later, on December 23, 2008, Plaintiff filed a complaint in this Court. The complaint alleged that Defendant violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* ("Count I") by terminating Plaintiff due to his HIV+ status. Plaintiff subsequently filed an amended complaint. The amended complaint alleged that Defendant also violated Plaintiff's rights under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* ("Count II"). On April 10, 2009, Lyra answered the amended complaint and asserted affirmative defenses. See DE 14.

Thereafter, the Court entered summary judgment on the FMLA claim in favor of

Defendant.  See DE 41.  Only Count I, wherein Plaintiff claims Lyra violated the ADA by discriminating against Plaintiff because of his HIV+ status, requires adjudication.  Trial began on June 10, 2010.[1]

On June 17, 2010, at the close of Plaintiff's case, Defendant moved for judgment as a matter of law on two grounds: 1) Plaintiff has failed to produce evidence that Plaintiff suffered from a disability at the time of his termination, as that term is defined within the ADA; and 2) Plaintiff has failed to produce evidence that he was exposed to a hostile work environment sufficient to give rise to a finding that he was constructively discharged from his employment.

## II. DISCUSSION

### A. Legal Standard

Rule 50 of the Federal Rules of Civil Procedure provides in pertinent part as follows:

> (a) Judgment as a Matter of Law.
>
>   (1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.
>
>   (2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury.  Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to judgment.

See Bogle v. Orange County Bd. of County Comm'rs, 162 F.3d 653 (11th Cir. 1998).

---

[1] To accommodate the parties, trial in this action proceeded only on Tuesdays and Thursdays.

In evaluating a defendant's Rule 50 motion, made at the close of the plaintiff's case, the Court must consider all the evidence in the light most favorable to the plaintiff and grant the plaintiff the benefit of all reasonable inferences.  Id. (citing Richardson v. Leeds Police Dep't, 71 F.3d 801, 805 (11th Cir. 1995)).  Finally, judgment as a matter of law is appropriate only if the facts and inferences "point so overwhelmingly in favor of the movant . . . that reasonable people could not arrive at a contrary verdict."  Id. (citing Richardson, 71 F.3d at 805).

The evidence viewed in a light most favorable to the Plaintiff fails to establish that Plaintiff suffered a disability prior to discharge.  Furthermore, Plaintiff did not demonstrate that he suffered from a hostile work environment because of his HIV+ status.  Therefore, the Court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for Plaintiff.

### B. Plaintiff Has Not Produced Evidence That He Was Disabled at the Time of His Alleged Termination

To prevail on his ADA claim the Plaintiff must prove each of the following facts by a preponderance of the evidence:

| | |
|---|---|
| First : | That the Plaintiff had a "disability," as hereafter defined; |
| Second : | That the Plaintiff was a "qualified individual," as hereafter defined; |
| Third : | That the Plaintiff was discharged from employment by the Defendant; and |
| Fourth : | That the Plaintiff's disability was a substantial or motivating factor that prompted the Defendant to take that action. |

See generally ADA; see also 11th Circuit Pattern Civil Jury Instruction, 1.5.1 Americans With Disabilities Act (Disparate Treatment Claim) 42 USC §§ 12101–12117.

Thus, Plaintiff must prove that he had a disability.  Plaintiff contends that his HIV+ status constitutes a disability.  HIV+ status, however, is not a *per se* disability.

3

See Bragdon v. Abbott, 524 U.S. 6234, 641-42 (1998).  Thus, to prove that his HIV+ status constitutes a disability, Plaintiff must prove that his HIV+ status has substantially limited one of his major life activities.  See id.; see also 42 U.S.C. § 12102(2)(A).

Defendant contends that the record contains no evidence that Plaintiff's HIV+ status has substantially limited one of Plaintiff's major life activities.  Plaintiff, on the other hand, maintains that the record shows Plaintiff's HIV+ status substantially limited Plaintiff's major life activities because Plaintiff's HIV+ status 1) interfered with his ability to sleep, 2) required him to take medications that made him nauseous, 3) made awkward his ability to become romantically involved with others, and 4) caused Plaintiff to experience renal failure.

### 1. Sleep

Plaintiff testified that because of his HIV, he suffers from neuropathy.  Plaintiff further testified that the neuropathy interferes with his ability to sleep at night.  Specifically, Plaintiff testified that sometimes he paced all night.  On cross-examination, however, Plaintiff testified that he got enough sleep to work fifty to sixty hours per week.  Furthermore, when asked if he was able to get between two and seven hours of sleep per night, Plaintiff testified that he was able to get that amount of sleep, depending on the amount of anxiety he had.

Sleep constitutes a major life activity.  See Nadler v. Harvey, Case No. 06-12692, 2007 WL 2404705, at *5 (11th Cir. Aug. 24, 2007) (finding that sleep is a major life activity, but that the plaintiff's insomnia – which allowed him an average of five and a half to six hours of sleep per night – did not substantially limit that activity).  Based on the record in this case, reasonable people could not conclude that Plaintiff's HIV+ status substantially limited his ability to sleep.  To the contrary, Plaintiff indicated that he

got enough sleep to do his job, and that his ability to sleep was largely dependent on his anxiety level.  Thus, reasonable people could not find that Plaintiff's HIV+ status substantially interfered with his sleep for purposes of deeming Plaintiff disabled as that term is defined in the ADA.

### 2. Nausea

Plaintiff testified that he experiences nausea as a result of the medications he must take due to his HIV+ status.  Plaintiff, however, did not explain the severity of the nausea or otherwise demonstrate how the nausea substantially limits a major life activity.  Although the Court does not find that nausea can never substantially limit a major life activity, the record in this case does not contain enough evidence for a reasonable fact-finder to conclude that Plaintiff's HIV-related nausea substantially limited any of his major life activities.  See Littleton v. Wal-Mart Stores, Inc., 231 Fed, App'x 874, 877 (11th Cir. 2007) (citing Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195 (2002) ("Merely having an impairment does not make one disabled for purposes of the ADA.  Claimants need to demonstrate that the impairment limits a major life activity.")).

### 3. Romantic Relationships

Plaintiff testified that when he was first diagnosed with HIV, as a twenty-one year-old in the late nineteen eighties, that his HIV status caused him psychological problems that required him to see a therapist for two years.  Plaintiff also testified that his HIV+ status made very uncomfortable the topic of dating because he felt an obligation to reveal to any prospective partners his HIV+ status.

Plaintiff, however, offered no testimony or other evidence that indicated Plaintiff had any difficulty with these issues at the time of his alleged termination.  Thus, even if

the Court found that Plaintiff's difficulty in finding a sexual partner constituted a substantial limitation on a major life activity – a finding the Court need not make in this case – the Court finds that based on the record before the jury, reasonable fact-finders could not conclude that this aspect of Plaintiff's HIV+ status substantially limited a major life activity during the relevant time period.

### 4. Renal Failure

The Court recognizes that renal failure may constitute a substantial limitation on a major life activity.  See, e.g., Fiscus v. Wal-Mart Stores, Inc., 385 F.3d 378 (3d Cir. 2004) (holding that elimination of waste from blood was "major life activity" under the ADA).  Here, however, Plaintiff merely testified that he had to put off back surgery because, among other reasons, he was experiencing renal failure.  Plaintiff offered no testimony concerning how the renal failure affected his major life activities.  In Fiscus, for example, the plaintiff offered testimony that she had been diagnosed with "end-stage renal disease, the condition of total or near-total permanent kidney failure" and that she was undergoing dialysis during the relevant time period.  Id. at 380.  Specifically, in Fiscus, the record contained evidence that the plaintiff "spent four to six hours, three times a week, hooked to a machine to have her blood cleansed."  Id.

Here, no such evidence exists in the record.  Plaintiff offered evidence only that he was experiencing renal failure.  Plaintiff offered no evidence – other than his need to postpone a surgical procedure – regarding the consequence of his renal failure.  Although the Court recognizes the potentially significant effects of renal failure, the Court will not assume the consequences of Plaintiff's renal failure.  See Littleton, 231 Fed, App'x at 877 (citing Toyota Motor, 534 U.S. at 195 ("Merely having an impairment does not make one disabled for purposes of the ADA.  Claimants need to demonstrate

that the impairment limits a major life activity.")).  Thus, based on the record before the Court, reasonable people could not find that Plaintiff's HIV+ status has substantially limited a major life activity.

### C. Constructive Discharge

Even if reasonable people could find that Plaintiff suffered from a disability during the relevant time period, Plaintiff must also establish that he was discharged from his employment by the Defendant.  Here, record evidence indicates that Plaintiff resigned from his position.  Plaintiff contends that his resignation was a result of a constructive discharge and therefore tantamount to termination for purposes of his ADA claim.

"[T]o show that he was constructively discharged, an 'employee must prove that his working conditions were so difficult or unpleasant that a reasonable person would have felt compelled to resign.'"  Aguirre v. City of Miami, Case No. 04-23205, 2007 WL 2700579, at *4 (S.D. Fla. Sept. 12, 2007) (quoting Hill v. Winn-Dixie Stores, Inc., 934 F.2d 1518, 1526-27 (11th Cir. 1991); Wardwell v. School Bd. of Palm Beach County, Florida, 786 F.2d 1554, 1557 (11th Cir. 1986)).  "An employee's working conditions, therefore, must significantly deteriorate in order for the court to consider an employer's actions to be a constructive discharge."  Id.

Here, record evidence indicates that Plaintiff's working conditions deteriorated over the course of his employment.  Specifically, the record evidence reveals that one of the members of Defendant's board of directors – Bill Murphy – berated Defendant and threatened to fire him.  Mr. Murphy, however, never mentioned Plaintiff's HIV+ status.  Furthermore, the record evidence reveals that Bill Murphy also berated other members of the staff and threatened to fire them as well.  Mr. Murphy seems to have

7

directed most of his ire towards Plaintiff, but Plaintiff was the President of a company that Mr. Murphy believed – warranted or not – was underperforming.  In other words, to the extent Mr. Murphy's abusive behavior made Lyra Management, Inc. a hostile work environment, the record evidence suggests that it was hostile for all involved and had nothing to do with Plaintiff's HIV+ status.  Reasonable fact-finders could not find otherwise.

Plaintiff also testified that members of the board of directors began to use a restroom that was out of the way once they learned he was HIV+, but reasonable people could not find that such behavior, even if motivated by knowledge of Plaintiff's HIV+ status, constitutes a hostile work environment.  Plaintiff also testified that members of the board of directors ceased saying hello to him in the office.  Reasonable fact-finders cannot find that failing to say hello to someone constitutes a hostile work environment.  Because Plaintiff has not proved that he suffered from a hostile work environment as a result of discrimination based on his HIV+ status, Plaintiff has failed to produce evidence that he was constructively discharged.

### III. CONCLUSION

For the reasons stated above, it is **ORDERED AND ADJUDGED** that Defendant's Motion for Judgment as a Matter of Law pursuant to Rule 50 of the Federal Rules of Civil Procedure is **GRANTED**.  The Court will enter a separate final judgment.

**DONE AND ORDERED** in Chambers at Ft. Lauderdale, Florida this 18th day of June, 2010.

Copies provided to counsel of record.

JAMES I. COHN
United States District Judge